# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| NICHOLAS KINCADE,<br>    Plaintiff,<br><br>    v.<br><br>THOMAS DAVIDSON and<br>CITY OF LAFAYETTE,<br>    Defendants. | )<br>)<br>)<br>)   CAUSE NO.: 2:14-CV-234-PPS-JEM<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on an oral Motion to Compel brought by Defendant City of Lafayette and an oral Motion for Protective Order brought by Plaintiff Nicholas Kincade at a telephonic motion hearing on April 21, 2015, along with briefing filed by Defendant Lafayette [DE 39] on April 22, 2015, and by Plaintiff [DE 40] on April 27, 2015.

## BACKGROUND

This case involves claims that Defendants violated the Americans with Disabilities Act and Plaintiff's constitutional rights during an October 1, 2013, interaction between Plaintiff and Defendants resulting in injuries to Plaintiff and his wheelchair. The instant dispute arises out of Plaintiff's invocation of the Fifth Amendment in response to certain questions asked of him by Defendants at his deposition. Plaintiff apparently told several people that he had been "jumped" in the days preceding October 1, 2013: a private school security officer to whom Plaintiff spoke on October 1, 2013, immediately preceding the incident at issue in the case; the intake officer who completed a jail medical questionnaire after Plaintiff's October 1, 2013, arrest; and an officer completing an internal investigation into potential police misconduct related to the October 1, 2013, incident.

Defendant Lafayette seeks to compel answers from Plaintiff about his reports of this prior attack, arguing that if it occurred, it might have contributed to Plaintiff's injuries or the damage to his wheelchair, and that if it did not occur, prior inconsistent statements about his injuries would be relevant to his credibility. Plaintiff invoked his Fifth Amendment right against self-incrimination during his initial deposition and now seeks a protective order to preclude him from having to answer the proposed questions about his reports of being "jumped."

## ANALYSIS

The Fifth Amendment privilege is "[n]ot limited to the criminal context" but "protects the individual from being compelled 'to answer official questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 389 (7th Cir. 1995) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976)) (other citations omitted). In order "[t]o be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have some tendency to subject the person being asked the question to criminal liability." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir. 2002) (citing *United States v. Apfelbaum*, 445 U.S. 115, 128 (1980)) (other citations omitted). The possibility of prosecution need not rise to the level that the Court deems it to be "likely;" it need only be more than "a fanciful possibility of prosecution." *Resnover v. Pearson*, 965 F.2d 1453, 1462 (7th Cir. 1992) ("We cannot agree that a witness' constitutional privilege against self-incrimination depends upon a judge's prediction of the likelihood of prosecution. As we made clear in *Folding Carton*, '[I]t is only when there is but a fanciful possibility of prosecution that a claim of Fifth Amendment privilege is not well taken.'") (quoting *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 871 (7th Cir.1979)).

2

In this case, Plaintiff argues that answering Defendants' questions about comments he made about being "jumped" might lead to prosecution for violating Indiana's false informing statute, which provides, in relevant part, that "[a] person who: (1) gives a false report of the commission of a crime or gives false information in the official investigation of the commission of a crime, knowing the report or information to be false . . . commits false informing, a Class B misdemeanor." Ind. Code § 35-44.1-2-3(d)(1). Defendant Lafayette argues that it is unlikely that someone would face prosecution for making a false statement about an incident unrelated to the crime being officially investigated. It also argues that if Plaintiff made a false statement about being jumped, it would not be false reporting within the meaning of the statute because Plaintiff was not making an official report. However, Defendant Lafayette's assertions that its attorney does not know of anyone being prosecuted in a scenario like this one and that it is unlikely that Plaintiff would be prosecuted for violating Indiana's false informing statute are not sufficient to make the possibility of prosecution merely "fanciful." Accordingly, it appears that Plaintiff does have Fifth Amendment grounds for refusing to answer some of the questions put to him.

Defendant Lafayette provides five specific questions it wishes to have Plaintiff answer. Without knowing the content of Plaintiff's truthful answer, the Court refrains from specifically ordering him to answer any particular questions. The Court does note that the Fifth Amendment is clearly implicated by any question invoking a response about illegal drug possession. It may also be appropriate for Plaintiff to refuse, on Fifth Amendment grounds, to provide an answer to any questions about statements that might be false reports of a crime. On the other hand, it appears that some of the questions posed by Defendant Lafayette may seek information about other topics raised during particular conversations in which the potentially false reports were also mentioned, and, to the extent that the questions and answers relate to other statements or actions of Plaintiff and would not

3

be incriminating, Plaintiff's refusal to answer them on Fifth Amendment grounds would be inappropriate. The Court is appreciative of Defendants' desire to obtain information about injuries to Plaintiff or damage to his wheelchair that may have occurred in the few days prior to October 1, 2013, but it appears to the Court that Defendants should be able to elicit that information without reference to any potential false statements.

To the extent that Defendant is seeking sanctions, including a stay of the case, that is unwarranted at this stage of the case. However, invocation of the Fifth Amendment privilege is not without consequences, and a stay or other sanctions may be appropriate. Plaintiff is reminded that "a plaintiff[] who initiates a civil action but refuses to present evidence, cannot then prevail on the merits with regard to those issues on which he bears the burden of proof." *Doe v. Bd. of Educ. of Oak Parks River Forest High Sch. Dist. 200*, No. 94 C 6449, 1995 WL 234563, at *3 (N.D. Ill. Apr. 18, 1995) (prohibiting plaintiff from "present[ing] evidence which bears directly upon those areas in which he invoked constitutional protection" and reminding him that "[a]ll appropriate inferences adverse to the plaintiff may be drawn because of the invocation of the privilege in this civil action") (quoting *Hiley v. United States*, 807 F.2d 623, 628 (7th Cir.1986)).

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS in part** Defendant City of Lafayette's Motion to Compel and **GRANTS in part** Plaintiff Kincade's Motion for Protective Order, to the extent described above.

**SO ORDERED** this 28th day of April, 2015.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

4